## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

BARBARA COPELAND,                            )
                                  )
         **Plaintiff,**                       )
                                  )
         **v.**                                     )   **Civil Case No. 14-1708 (RJL)**
                                  )
DISTRICT OF COLUMBIA,                       )
                                  )
         **Defendant.**                      )

## MEMORANDUM OPINION

(December **23**rd, 2020) [Dkt. # 47]

Plaintiff Barbara Copeland ("Copeland" or "plaintiff") worked as a Correction Treatment Specialist at the District of Columbia Department of Corrections ("DOC") between 1988 and 2017. Plaintiff brings this suit against the District of Columbia ("the District" or "defendant") under Title VII of the Civil Rights Act of 1964, alleging hostile work environment sexual harassment, *quid pro quo* sexual harassment, and retaliation based on the alleged conduct of one of her supervisors, James Riddick ("Riddick"). Before this Court is the District's motion for summary judgment. Def.'s Mot. for Summ. J. [Dkt. # 47] ("Def.'s Mot."). For the following reasons, defendant's motion for summary judgment [Dkt. # 47] is **GRANTED** as to all three counts in plaintiff's Amended Complaint [Dkt. # 8].

## BACKGROUND

From 1988 to 2017, plaintiff worked as a correction treatment specialist with the District of Columbia Department of Corrections. Def.'s Att. 1 ("Def.'s Stmt. of Facts") at ¶¶ 1-2 [Dkt. # 47-1] (citing Def.'s Ex. 1 (Pl. Dep. P12:5-19) [Dkt. # 47-3]). As a correction treatment specialist, plaintiff provided inmates with certain services, such as intake interviews, counseling sessions, parole and pre-release information, and inmate assessments. *Id.* ¶ 3 (citing Def.'s Ex. 2 (Position Description) [Dkt. # 47-4]).

### A. Alleged Incidents of Harassment and Retaliation.

Between 2010 and early 2012 James Riddick was plaintiff's immediate supervisor.[1] *Id.* ¶ 4. Copeland's present lawsuit against the District contains multiple alleged incidents of inappropriate comments by Riddick to Copeland and others and subsequent retaliation by Riddick against Copeland when she reported him for one of those comments. *See* Am. Compl. In the present motion, the District does not contest—nor does it concede—that these incidents occurred. Rather, the District argues that Copeland is *not* entitled to recover under Title VII even if they did occur. As such, I will describe the incidents of harassment and retaliation as Copeland describes them in her complaint and deposition testimony.

On January 26, 2012, Copeland alleges that Riddick told her, "You have to kiss me in order to get a job," during a discussion of Copeland's interest in a new position and her employment evaluation ("kiss me" comment). *Id.* ¶ 8; Pl. Dep. 16:10-15. A week later,

---

[1] As the District explains in its motion, the record is unclear as to when Riddick began supervising Copeland. Def.'s Mot. at 2 n.1. But the District agrees that Riddick was Copeland's supervisor "[d]uring the relevant period." *Id.* at 2.

Copeland reported Riddick's "kiss me" comment in an email between her, Riddick, and Special Assistant to the Deputy Director Leona Bennett ("Bennett"). Def.'s Ex. 9 (Email from Copeland to J. Riddick (Jan. 2012)) [Dkt. # 47-11]. The next day, DOC's Deputy Director of Operations, Carolyn Cross, issued cease and desist orders to both Copeland and Riddick, ordering them to avoid contact with each other, and Bennett assigned Copeland a new supervisor. Def.'s Stmt. of Facts ¶¶ 18-20 (citing Def.'s Ex. 11 (Pl.'s Cease and Desist Order) [Dkt. # 47-13]; Def.'s Ex. 12 (Supervisor Guidance Memorandum) [Dkt. # 47-14]).

Copeland claims that Riddick retaliated against her because she reported the "kiss me" comment by: (1) increasing her workload by abruptly assigning her to a new unit, resulting in a backup in her assignments; (2) denying her the opportunity to apply to jobs in other places successfully; (3) denying her request for a lateral transfer into a less stressful unit within DOC; (4) denying her request for FMLA leave; (5) downgrading her performance reviews; (6) denying her request for drug counseling training. *See* Am. Compl. ¶ 30; Pl. Dep. P164:17-P166:6.

At a holiday luncheon on December 21, 2012, Copeland claims that Riddick was looking for a seat, and when co-workers told Riddick that an empty seat was reserved for another co-worker, Winfred Hawkins, Riddick stated that Hawkins—a female employee— could sit on his lap ("sit on lap" comment). *Id.* ¶ 14; Def.'s Ex. 3 (Employee Report of Significant Incident/Extraordinary Occurrences) [Dkt. # 47-5]; Def.'s Ex. 4 (Charge of Discrimination) [Dkt. # 47-6].[2] Riddick's "sit on lap" comment was *not* directed at

---

[2] Contrary to Copeland's Employee Report of Significant Incident/Extraordinary Occurrences and COD, her Amended Complaint states, "Riddick suggested that *[p]laintiff,*

Copeland.  Def.'s Ex. 3; Def.'s Ex. 4; Pl. Dep. P89:8-15.  Rather, Copeland alleges that she was merely present when Riddick made the comment, Pl. Dep. P89:8-15, and she deemed the comment "offensive."  Am. Compl. ¶ 14.

Ten days later, Copeland filed an Employee Report of Significant Incident/Extraordinary Occurrence regarding Riddick's alleged "sit on lap" comment. Def.'s Stmt. of Facts ¶ 7 (citing Def.'s Ex. 3).  In January 2013, a DOC Equal Employment Opportunity ("EEO") Investigator, Wanda Patten ("Patten"), interviewed Copeland about the "sit on lap" comment, and Copeland apparently reported "other inappropriate comments by Mr. Riddick directed towards her [] which she deemed to be sexual harassment which she reported up the chain for investigation." *Id.* ¶ 10 (citing Def.'s Ex. 5 (Employee Misconduct Memorandum) [Dkt. # 47-7]).  Patten's report states that the "sit on lap" incident was referred to another officer for further handling, Def.'s Ex. 5, but it is unclear from the record if anything happened as a result of this report.

In September 2013, Copeland alleges that Riddick walked closely behind her and stated, "All of the case managers have big butts, except for you" ("big butts" comment). Am. Compl. ¶ 16.  Copeland felt as if Riddick was disrobing her with this comment.  *Id.*

Between February 10 and February 20, 2014, an investigator from PEEMPT—an independent contractor responsible for investigating sexual harassment complaints within

---

could sit on *a fellow female employee's lap*, which [p]laintiff deemed offensive."  Am. Compl. ¶ 14 (emphasis added).  But—consistent with her COD and Employee Report of Significant Incident/Extraordinary Occurrences—Copeland's deposition makes clear that Riddick asked Hawkins to sit on Riddick's lap.  Pl. Dep. P89:8-15.

DOC—attempted to contact Copeland regarding a complaint. Def.'s Stmt. of Facts ¶ 45 (citing Def.'s Ex. 27 (Email from W. Johnson to T. Martin (Feb. 21, 2014) [Dkt. # 47-28]). It is unclear from the record which allegations PREEMPT was investigating at this time and whether those allegations stemmed from a new complaint filed in 2014 or one of Copeland's prior complaints in 2012. *See* Def.'s Mot. at 29; Pl. Dep. P123:20-P124:1. Copeland testified that she did not communicate with the PREEMPT investigator because she already had a lawyer and thought it was unnecessary. Pl. Dep. P123:14-19; *see also* Def.'s Ex. 27. PREEMPT ultimately dismissed the complaint "[b]ecause [Copeland] ha[d] not proffered sufficient evidence to PREEMPT to support [her] claim of sexual harassment." Def.'s Ex. 28 (Ltr. from T. Martin to B. Copeland (March 20, 2014)) [Dkt. # 47-29].

In addition, Copeland asserts that Riddick made other inappropriate comments to her, including: "You still got it after all these years" ("still got it" comment), Am. Compl. ¶ 9; Pl. Dep. 33:10-17; "Lift up your jacket and let me see what you're working with" ("lift up your jacket" comment), Pl. Dep. P37:12-15; "Your hair is beautiful," *id.* P100:16-P101:9; and "You look good in your clothes" ("you look good" comment), *id.* Copeland testified that she cannot recall exactly when these comments were made, but that Riddick made these comments "every so often," which—according to Copeland—means about every six months. *Id.* P36:18-P37:4. Finally, Copeland alleges that Riddick repeatedly asked Copeland to go "hand dancing"[3] with him at a club. Am. Compl. ¶ 15; Pl. Dep.

---

[3] "Hand dancing"—also called "D.C. hand dancing"—is a "contemporary, improvisational form of swing style partner dancing developed in the Washington, D.C. area in the early

P102:7-17.   According to Copeland, these requests came "sporadically" on Fridays after work.  Pl. Dep. P103:3-8.

On March 8, 2014, Copeland filed a Charge of Discrimination ("COD") with the Equal Employment Opportunity Commission ("EEOC"), listing two incidents—the January 25, 2012 "kiss me" comment and the December 21, 2012 "sit on lap" comment— along with a retaliatory act of being "placed on double duty" on November 24, 2013.  Def.'s Stmt. of Facts ¶¶ 8-9 (citing Def.'s Ex. 4 (EEOC no. 570-2014-00077) [Dkt. # 47-6]).  Copeland indicated on the COD that the basis for her claims was her race, color, sex, age, and retaliation.[4]  Def.'s Ex. 4.

### B. Procedural History.

On October 17, 2014, Copeland filed a complaint *pro se* against DOC.  *See* Compl. [Dkt. # 1].  DOC moved to dismiss the complaint, arguing that it was non-sui juris because DOC was a subordinate agency of the District.  Def.'s Mot. to Dismiss [Dkt. # 5].  While that motion was pending, Copeland retained counsel and filed a First Amended Complaint, naming the District as the only defendant.  Notice of Appearance [Dkt. # 6]; Am. Compl.

Copeland's Amended Complaint raises three claims under Title VII.  Am. Compl. ¶¶ 18-31.  In Count I (Hostile Work Environment Sexual Harassment), Copeland contends

---

1950s by African Americans" that "evolved from the early Lindy hop and jitterbug dance styles of the 1930s and 1940s."  *The National Hand Dance Association*, The Kennedy Center,    https://www.kennedy-center.org/artists/t/ta-tn/-the-national-hand-dance-association/ (last visited Dec. 15, 2020).

[4] There are no allegations in the Amended Complaint concerning race, color, or age.

that Riddick "repeatedly made comments and advances toward [p]laintiff in a sexually offensive matter, thus creating a blatantly hostile work environment." *Id.* ¶ 21. As for Count II (*Quid Pro Quo* Sexual Harassment), Copeland alleges that Riddick's comment— "you need to kiss me in order to get the job"—was a *quid pro quo* requesting sexual favor in exchange for assistance in Copeland's application to a different job. *Id.* ¶ 25. Finally, Count III (Retaliation) alleges multiple incidents of retaliation after Copeland reported the "kiss me" comment. *Id.* ¶ 30.

The parties undertook a lengthy period of discovery from November 2015 to February 2020. The District moved for summary judgment on April 24, 2020. The District's motion is now ripe for review.

## ANALYSIS

### I.    Standard of Review

Under Federal Rule of Civil Procedure 56(a), a moving party is entitled to summary judgment when—after reviewing the pleadings, discovery and disclosure materials on file, and any affidavits—there is "no genuine dispute as to any material fact." Fed. R. Civ. P. 56(a). A dispute is "genuine" when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). And a fact is "material" when it "may affect the outcome of the litigation." *Montgomery v. Risen*, 875 F.3d 709, 713 (D.C. Cir. 2017). When evaluating a motion for summary judgment, a court must "examine the facts in the record and all reasonable inferences derived therefrom in a light most favorable to the nonmoving party." *Robinson v. Pezzat*, 818 F.3d 1, 8 (D.C. Cir. 2016) (quotations omitted).

The movant bears the initial burden of identifying evidence demonstrating that there is no genuine dispute of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant—here, defendant—can satisfy that burden by "citing to particular facts of materials in the record" or by "showing that the materials cited do not establish" the "presence of a genuine dispute." Fed. R. Civ. P. 56(c). If the movant meets this initial burden, the burden shifts to the nonmoving party—here, plaintiff—to identify "specific facts showing that there is a genuine issue for trial." *Celotex Corp.*, 477 U.S. at 324 (quotations omitted). But the nonmoving party must come forward with more than "a scintilla of evidence" or the "mere allegations or denials" in her pleadings in order to establish a genuine issue of material fact. *Anderson*, 477 U.S. at 248, 252. If the nonmoving party fails to come forward with such evidence, the moving party may prevail, citing "failure of proof." *Celotex Corp.*, 477 U.S. at 323.

## II.    Exhaustion of Administrative Remedies.

The District first argues that it is entitled to judgment as a matter of law because Copeland failed to exhaust her administrative remedies. Def.'s Mot. at 15. Generally, all Title VII claims require that the plaintiff "exhaust" her administrative remedies for each act of unlawful discrimination or retaliation by filing a timely Charge of Discrimination ("COD") with the EEOC. 42 U.S.C. § 2000e-5(e); *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 109-10 (2002). Because the District of Columbia has entered into a "work-sharing agreement" between the EEOC and a local fair employment practices office, the parties agree that the time period in which a plaintiff must file a COD is 300-days. Def.'s

8

Mot. at 15-16; *see generally* Pl.'s Mem. in Opp. [Dkt. # 49] ("Pl.'s Opp.) (not disputing the timeline).

In this case, the District argues that some of the discrete incidents of discrimination or retaliation in Copeland's COD were outside of the 300-day filing period and, thus, are time barred. Def.'s Mot. at 15-20. Copeland filed her COD on March 8, 2014 with the EEOC. Def.'s Stmt. of Facts ¶ 8; Def.'s Ex. 4. According to the District, anything occurring prior to 300 days before March 8, 2014—i.e. May 12, 2013—is time barred. Specifically, the District avers that the two acts of discrimination listed on her COD—the January 25, 2012 "kiss me" comment and the December 21, 2012 "sit on lap" comment— and two discrete acts of retaliation are time barred. Def.'s Mot. at 17-18. I will evaluate each of these arguments as they relate to Copeland's claims because the nature of her claims affects the outcome of this argument.

### A. Plaintiff Exhausted Her Administrative Remedies Concerning Her Hostile Work Environment Claim (Count I).

The applicable rules for timeliness of a hostile work environment claim are different than discrete acts of harassment or retaliation because hostile work environment claims are "composed of a series of separate acts that collectively constitute one 'unlawful employment practice.'" *Wise v. Ferriero*, 999 F. Supp. 2d 286, 294 (D.D.C. 2013) (quoting *Morgan*, 536 U.S. at 117). For a hostile work environment claim to be timely filed, plaintiff must demonstrate that at least one "act contributing to the claim occurs within the filing period," even if other "component acts of hostile work environment fall outside the statutory time period." *Morgan*, 536 U.S. at 117.

Here, Copeland's Amended Complaint alleges at least one incident in her hostile work environment claim that fell within the filing period (i.e. after May 12, 2013): the "big butts" comment in September 2013.[5] Am. Compl. ¶ 16; Pl. Dep. P106:10-17.  This incident is "part of the same unlawful employment practice," namely Copeland's allegations that Riddick repeatedly made inappropriate comments to and advances on Copeland that amounted to a hostile work environment. *See Morgan*, 536 U.S. at 122.  Because at least one act that constitutes part of Copeland's hostile work environment claim fell within the filing period, her claim is not time barred.[6]

### B. Plaintiff Failed to Exhaust Her Administrative Remedies Concerning Her *Quid Pro Quo* Claim (Count II).

The District contends that Copeland's *quid pro quo* claim in Count II is time barred because Copeland did not file her COD within 300 days of the only alleged request for sexual favor—the "kiss me" comment. Def.'s Mot. at 17.  Unfortunately for plaintiff, defendant is correct.

---

[5] Copeland also testified that Riddick made other comments, such as the "hair is beautiful" and "good in your clothes" comments, about every six months, including in the time period between December 2012 and September 2013. Pl. Dep. P36:18-P37:4.   A reasonable inference from this testimony is that at least some of these comments fell after May 12, 2013.

[6] To be sure, the two discriminatory acts specifically listed on Copeland's COD occurred well outside the filing period.  But the District does *not* contend that the allegations in Copeland's Amended Complaint that fell *within* the filing period are not "adequately linked into a coherent hostile environment claim" with the allegations listed in the COD.  *See Baird v. Gotbaum*, 662 F.3d 1246,1251 (D.C. Cir. 2011).

Under Title VII, a plaintiff claiming *quid pro quo* sexual harassment must prove, among other elements, that she was subjected to unwelcome sexual advances or requests for sexual favors. *Norris v. Washington Metro. Area Transit Auth.*, 342 F. Supp. 3d 97, 121 (D.D.C. 2018). Here, Copeland only alleges *one* unwelcome sexual advance or request for sexual favor in Count II: Riddick's alleged comment, "You have to kiss me in order to get a job," which occurred in January 2012. Am. Compl. ¶ 25. Copeland filed her COD in March 2014—over two years *after* this alleged comment and well after the 300-day filing period—thus, making this claim untimely.

Copeland counters by arguing that "Riddick's conduct[] was ongoing in nature such that [p]laintiff's protected disclosures to DOC administrators were continuous thus not barred by the typical exhaustion period." Pl.'s Opp. at 16. As a factual matter, Copeland fails to raise any facts that incorporate any of her other allegations into her *quid pro quo* claim. As a legal matter, while Copeland's argument that Riddick's conduct was ongoing is relevant to the timeliness of her *hostile work environment* claim, it is *irrelevant* to the timeliness of her *quid pro quo* claim. Hostile work environment claims—which by "[t]heir very nature involve[] repeated conduct," *Morgan*, 536 U.S. at 115—are distinct from Copeland's *quid pro quo* claim here—which involves a single, discrete act, Am. Compl. ¶ 25. *See also Gary*, 59 F.3d at 1395 (describing the distinction between *quid pro quo* and hostile work environment claims). Consequently, because the only unwelcome sexual advance or request for sexual favor in Copeland's *quid pro quo* claim is time-barred, the District is entitled to summary judgment as a matter of law as to Count II.

### C. Plaintiff Exhausted Her Administrative Remedies Concerning Some— but not all—of Her Retaliation Claim (Count III).

The District argues that two of the alleged retaliation incidents in her COD—the downgrading of her performance evaluation and denial of her FMLA request—are time barred. Def.'s Mot. at 18-19. "A discrete retaliatory … act 'occurred' on the day that it 'happened,'" and "[a] party, therefore, must file a charge within … 300 days of the date of the act or lose the ability to recover for it." *Morgan*, 536 U.S. at 110. Unlike hostile work environment claims, "discrete acts that fall within a statutory time period do not make timely acts that fall outside the time period." *Id.* 112. Therefore, Copeland can only recover for acts that fell within the 300-day period prior to her COD—i.e. acts that occurred on or after May 12, 2013.

Here, Copeland alleges that Riddick retaliated by downgrading her performance evaluation, which occurred between September 2011 and October 2012, and denying her FMLA request, which occurred in February 2006. *See* Def.'s Exs. 6, 7 (performance evaluations); Def.'s Exs. 16-18 (FMLA leave request, determination, and denial).[7] Both of these events, however, occurred well before May 12, 2013 and are thus time barred from recovery.

As such, the District is entitled to summary judgment on Count III to the extent Copeland relies on the alleged retaliatory acts of the downgrade in reviews of her performance between September 2011 and October 2012 and the denial of her FMLA

---

[7] According to the District, this is the only FMLA leave denial in Copeland's personnel file, Def.'s Mot. at 18, and Copeland has not identified a more recent denial.

request in 2006.[8]   The alleged retaliatory acts that occurred on or after May 12, 2013,

however, are *not* time barred, and I address them further below.

### III.   Hostile Work Environment Sexual Harassment.

In Count I, Copeland alleges that Riddick made unwanted sexual comments and

advances that created "a blatantly hostile work environment in violation of Title VII" and

that the District "failed to prevent and remedy the sexual harassment and hostile workplace

to which [p]laintiff was exposed …." Am. Compl. ¶¶ 20-21.

In its motion for summary judgment, the District contends that it is entitled to the

*Faragher/Ellerth* affirmative defense because DOC exercised reasonable care to prevent

and correct promptly any sexually harassing behavior and Copeland failed to take

advantage of DOC's preventative or corrective opportunities.  Def.'s Mot. at 23-29.  In the

alternative, the District argues that Copeland's hostile work environment sexual

harassment claim fails because "Riddick's alleged comments were not pervasive and

continuous enough to create a hostile work environment" and Copeland failed to put DOC

on notice of the hostile work environment.  *Id.* at 29-31.  Specifically, the District contends

that Copeland's testimony established that Riddick only made comments "every so often,"

meaning about every six months, and Riddick asked Copeland to go hand dancing

---

[8] As discussed above, Copeland's opposition argues broadly that her claims are not time barred because Riddick's comments were "ongoing in nature." Pl.'s Mot. at 16.  This argument fails for her retaliation claim for the same reason it fails for her *quid pro quo* claim:  acts of retaliation are discrete and *not* subject to the ongoing violations doctrine. *See Morgan*, 536 U.S. at 110, 114 (rejecting the application of the ongoing violations doctrine to retaliation claims).

"sporadically" on Fridays after work.  Def.'s Mot. at 29-31.  Further, the District argues that Copeland does not know the specific dates of when Riddick made some alleged comments, which would force the trier of fact to speculate as to when Riddick made them.  *Id.*  Finally, the District contends that Copeland did not put DOC on notice that Riddick was allegedly subjecting Copeland to a hostile work environment because she only reported the "sit on lap" and "kiss me" comments in her COD.  *Id.*

For the reasons explained below, regardless of the District's *Faragher/Ellerth* defense, I find that no reasonable jury could conclude that Riddick's alleged comments were sufficiently severe, or pervasive, to subject Copeland to a hostile work environment under Title VII.

Title VII prohibits an employer from discriminating against an employee "with respect to his compensation, terms, conditions, or privileges of employment because of such individual's race, color, religion, sex, or national origin."  42 U.S.C. § 2000e-2(a)(1).  To make her prima facie case of hostile work environment sexual harassment under Title VII, Copeland must show: (1) she was a member of a protected class; (2) she was subjected to unwelcome sexual harassment; (3) the harassment was based on sex; (4) the harassment unreasonably interfered with her work performance and created an intimidating, hostile, or offensive working environment; and (5) the District may properly be held liable.  *Davis v. Coastal Int'l Sec., Inc.,* 275 F.3d 1119, 1122–23 (D.C. Cir. 2002) (citation omitted).

In our Circuit, "a plaintiff asserting a hostile work environment faces a high hurdle." *Fields v. Vilsack*, 207 F. Supp. 3d 80, 92 (D.D.C. 2016).  Title VII does not protect against "ordinary tribulations in the workplace."  *Faragher*, 524 U.S. at 788.  Indeed, Copeland

must show that her "workplace [was] permeated with discriminatory intimidation, ridicule, and insult that [was] sufficiently severe or pervasive to alter the conditions of [her] employment and create an abusive working environment." *Harris v. Forklift Sys. Inc.*, 510 U.S. 17, 21 (1993) (citation omitted).   The Court must consider "the totality of the circumstances, including the frequency of the discriminatory conduct, its severity, its offensiveness, and whether it interferes with an employee's work performance." *Baloch v. Kempthorne*, 550 F.3d 1191, 1201 (D.C. Cir. 2008) (citing *Faragher*, 524 U.S. at 787-88).[9]   But "even multiple instances of physical contact and sexual advances may not be sufficient to meet the demanding legal standard for a hostile work environment." *Bergbauer v. Mabus,* 934 F. Supp. 2d 55, 77 (D.D.C. 2013).

Here, Copeland alleges that Riddick created a hostile work environment through a series of inappropriate remarks about her body and clothes, through his request for a kiss, and through his repeated requests to go out with him.[10]   But Copeland does not recall when

---

[9] As discussed above, the allegations related to Copeland's hostile work environment claim are not time barred as long as they are "part of the same unlawful employment practice." *See supra* Sec. II.A. (citing *Morgan*, 5365 U.S. at 122).   Consequently, I consider all of Riddick's alleged comments and advances in determining whether these comments were sufficiently severe or pervasive.

[10] As for the "sit on lap" comment, the record shows that this comment was *not directed at Copeland*—she just witnessed it.   While not dispositive, "[i]ncidents involving only statements made by third parties to third parties, and not directed to the plaintiff, are generally considered too attenuated to support an inference that that the plaintiff was subjected to a hostile work environment." *Burton v. District of Columbia*, 153 F. Supp. 3d 13, 87 (D.D.C. 2015); *see also Byrd v. Vilsack*, 931 F. Supp. 2d 27, 47 (D.D.C. 2013) ("[C]onduct directed at others rather than at plaintiff … is less indicative of a hostile work environment.") (quotation and citation omitted).   Here, Copeland fails to provide any

most of these comments were made. Pl. Dep. P36:18-P37:4.  Rather, Copeland testified in her deposition that Riddick only made these comments about every six months.  *Id.* Further, Riddick only asked Copeland to go dancing with him "sporadically" after work. *Id.* P103:3-8.  Copeland does *not* raise any allegations that Riddick made any inappropriate physical contact.

Unfortunately for Copeland, the alleged incidents of harassment, either standing alone or in the aggregate, are insufficiently severe, or pervasive, to create an actionable hostile work environment under Title VII.  While the comments Riddick allegedly made are undoubtedly inappropriate in the workplace, they were infrequent—amounting to a few comments per year—and insufficiently severe.  Indeed, courts in our Circuit have granted summary judgment to the employer for conduct that is more pervasive or severe than what Copeland alleges here.  *See, e.g.*, *Bergbauer*, 934 F. Supp. 2d at 78 (Lamberth, J.) (finding no hostile work environment when a co-worker made compliments regarding a female employee's appearance, several inappropriate suggestive comments, and one crass sexual joke about oral sex); *Akonji v. Unity Healthcare, Inc*, 517 F. Supp. 2d 83, 97–98 (D.D.C. 2007) (Bates, J.) (finding no hostile work environment when a female employee was subjected to five incidents of sexual harassment by different co-workers over an eighteen-month period, including a co-worker touching her and attempting to kiss her, a co-worker touching her thigh, a co-worker asking her on a date, and a co-worker calling her beautiful);

---

evidence—other than her conclusion that Riddick's comment was "offensive"—that would support a hostile work environment claim based, in whole or in part, on this comment.

*Carter v. Greenspan*, 304 F. Supp. 2d 13, 25 (D.D.C. 2004) (Huvelle, J.) (finding no hostile

work environment when a co-worker caressed the plaintiff on his knee, placed her breast

on his arm, and placed her fingers on his buttocks).  Title VII is not a "general civility

code," *Faragher*, 524 U.S. at 788, and Copeland's allegations against Riddick do not

amount to an actionable claim.

In response, Copeland merely argues that Riddick's conduct must be

"contextualized."  Pl.'s Opp. at 9 (citations omitted).  While this is true, Copeland fails to

identify any facts that might put Riddick's comments in the context of an *actionable* Title

VII claim.  Instead, she argues that "Riddick … deliberately intimidated, frustrated, and

repeatedly made comments and advances toward [p]laintiff in a sexually offensive manner,

thus creating a blatantly hostile work environment in violation of Title VII …."  *Id.*  As if

to emphasize the conclusory nature of this statement, *Copeland cites only to her Amended*

*Complaint*.  This argument is woefully insufficient to create a genuine dispute of material

fact.  *See Pub. Citizen Health Research Group v. FDA*, 185 F.3d 898, 908 (D.C. Cir. 1999)

(Garland, J., concurring) ("Conclusory allegations unsupported by factual data will not

create a triable issue of fact.") (quoting *Exxon Corp. v. FTC*, 663 F.2d 120, 126-27 (D.C.

Cir. 1980)).

Because no reasonable jury could conclude that Riddick's alleged comments were

sufficiently severe or pervasive to create a hostile work environment, I grant the District's

motion for summary judgment as to Count I.[11]

---

[11] Because summary judgment is appropriate for the District based on the merits of
Copeland's Title VII claim, I need not reach the District's argument that it is entitled to

## IV.     Retaliation Claim.

Copeland's third claim alleges that Riddick retaliated against her after she reported in 2012 the "kiss me" comment "by causing her workload to be increased, denying her the opportunity to successfully apply for jobs in other places, denying her request for FMLA leave, and downgrading her employment ratings." Am. Compl. ¶ 28.  Copeland testified that retaliatory conduct regarding her attempts to apply for jobs in other places included the denial of a lateral transfer, an unsuccessful application to be a sex offender registrant with the Court Services and Offender Supervision Agency ("CSOSA"), a federal agency, and additional unsuccessful applications to other employers.  Pl. Dep.  P82:8-P84:10, P17:3-10, P25:12-21.  In her testimony, Copeland also alleged that she was denied a training opportunity.  Pl. Dep. P164:17-P166:6.  The District argues that these alleged retaliatory actions either do not amount to an "adverse employment action" or that Riddick was not involved in these alleged retaliatory actions.  Def.'s Mot. 35-38.  Unfortunately for Copeland, I agree with the District.

Title VII prohibits an employer from retaliating against an employee because the employee "opposed" a practice proscribed under Title VII or because the employee "made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing" under Title VII.  *Id.* § 2000e-3(a).  A court analyzes a Title VII retaliation claim using the *McDonnell Douglas* framework, *McDonnell Douglas v. Green*, 411 U.S. 792,

---

summary judgment under the *Faragher/Ellerth* defense or because Copeland failed to put DOC on notice of her hostile work environment.

802 (1973), under which the plaintiff bears the initial burden of establishing a prima facie case of retaliation: "(1) that [s]he engaged in statutorily protected activity; (2) that [s]he suffered a materially adverse action by [her] employer; and (3) that a causal link connects the two," *Jones v. Bernanke*, 557 F.3d 670, 677 (D.C. Cir. 2009).  The burden then shifts to the employer to articulate a legitimate, non-discriminatory reason for its actions. *McDonnell Douglas*, 411 U.S. at 802.  If the employer is successful, the burden shifts back to the employee to prove "that a reasonable jury could infer that the employer's given explanation was pretextual and that this pretext shielded [retaliatory] motives." *Jackson v. Gonzales*, 496 F.3d 703, 707 (D.C. Cir. 2007) (citation omitted).[12]

In the context of a retaliation claim, "adverse actions" "encompass a broader sweep of actions than those in a pure discrimination claim," *Balock*, 550 F.3d at 1198 n.4, because they "need not be employment-related or even occur in the workplace, nor must they result in a materially adverse change in the terms of conditions of [one's] employment," *Nurriddin v. Bolden*, 40 F. Supp. 3d 104, 116 (D.D.C. 2014).  Nevertheless, the retaliatory action must produce a material "injury or harm, meaning that it could dissuade[] a

---

[12] Under our Circuit's precedent, if—after careful consideration of an employer's evidentiary proffer, *Figueroa v. Pompeo*, 923 F.3d 1078, 1087 (D.C. Cir. 2019) (citation omitted)—the employer carries its burden of establishing a legitimate, non-retaliatory reason for its action, the *McDonnell Douglas* framework is essentially irrelevant, *Brady v. Office of Sergeant at Arms*, 520 F.3d 490, 493-94 (D.C. Cir. 2008). But, where the employer does not assert a legitimate, nondiscriminatory reason for the decision, the court must evaluate plaintiff's prima facie case. *Id.* at 494 n.2. For the remaining retaliatory claims, the District does not provide a legitimate, non-retaliatory reason; the District merely attacks Copeland's prima facie case.

reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co.*, 548 U.S. at 68 (quotation and citation omitted).

As an initial matter, any retaliatory action taking place prior to May 12, 2013 is time barred.   Consequently, I need not address Copeland's allegations regarding her performance downgrade between September 2011 and October 2012 and the denial of her FMLA request in 2006.  I will, however, review each of the remaining alleged retaliatory events in turn.

### A. Increased Work Load.

Copeland alleges that Riddick unlawfully retaliated by increasing her workload. Am. Compl. ¶ 30. In support, she testified that Riddick assigned her to work in a new unit that opened for inmates and that she was not given "forenotice" of the new assignment. Pl. Dep. P76:8-P77:15.   Additionally, because the new unit was in a different location, Copeland had to move offices, which reportedly caused her other assignments—such as intakes, status reports, and emails—to get backed up. *Id.*  Finally, Copeland testified that her workload increased when she was asked to give instructions to a less senior case manager. *Id.* P79:15-P80:21.

"[I]ncreased work must be frequent or particularly onerous to be material; otherwise they are *de minimis* and 'trivial.'" *Morales v. Gotbaum*, 42 F. Supp. 3d 175, 198 (D.D.C. 2014).  Here, Copeland's allegations concerning the increased workload are no different than what most employees expect under the constraints of a typical professional working environment.  Further, the fact that she was asked to give instructions to a less senior case manager is a common workplace occurrence, and Copeland does not demonstrate any

adverse effect because of that request. At best, Copland has only provided evidence that Riddick's action amounted to a workplace *inconvenience*. But such an inconvenience does not amount to an adverse action because no reasonable jury could find that it would have dissuaded a reasonable worker to continue pressing their charge of discrimination. *Burlington N. & Santa Fe Ry. Co.*, 548 U.S. at 68.

### B. Denial of Lateral Transfer.

Copeland testified that Riddick denied her request to transfer to a less stressful unit, such as a housing unit, within DOC. Pl. Dep. P82:8-P84:10. By way of comparison, Copeland stated that her unit had 160 inmates, but newer employees worked in units with forty inmates. *Id.* P84:8-10. The only evidence that this denial amounted to an adverse action is that, if granted, the new unit would have caused Copeland less stress. Pl. Dep. P82:8-P84:10. Copeland's stress is certainly relevant to her *subjective* injury, but it does not demonstrate an *objective* harm. *Holcomb v. Powell*, 433 F.3d 899, 902 (D.C. Cir. 2006) ("Purely subjective injuries … are not adverse actions …."). As such, Copeland has failed to demonstrate that a reasonable jury could find that Riddick's alleged denial of her request for a lateral transfer amounts to a sufficient deterrent to an employee continuing to press their claim of discrimination. *See Burlington N. & Santa Fe Ry. Co.*, 548 U.S. at 68

### C. Denial of Opportunities to Apply for Jobs.

Copeland claims that Riddick retaliated by denying her the opportunity to apply to other jobs—both within and outside DOC—successfully. Am. Compl. ¶ 30. In response, the District proffers Copeland's own testimony to establish that Riddick did not cause Copeland's inability to apply to other jobs successfully. Def.'s Opp. at 37-38 (citing

plaintiff's testimony).  Unfortunately for Copeland, the record demonstrates that Riddick was *not* involved in Copeland's failure to acquire new employment, and no reasonable jury could find otherwise.

Copeland testified that Riddick retaliated against her by interfering with her application to CSOSA as a sex offender registrant. Pl. Dep. P19:12-20. But CSOSA is a *federal* agency.  And Copeland provides no evidence that Riddick—a supervisor in an agency run by the District of Columbia—had any effect on her application to CSOSA. Indeed, she testified that CSOSA did not hire her because she failed a typing test and CSOSA wanted a male in the available position. P24:21-P25:11.

In addition, Copeland testified that she applied for a position as a health care specialist within DOC. Pl. Dep. P25:19-21.  But she does not remember when she applied for the position. *Id.* P25:22-P26:8.  What Copeland does remember, however, is that she did not need a recommendation from Riddick in order to get the job, and she does not know what role, if any, Riddick or her performance evaluation played in her not getting the job. *Id.* P26:16-P27:5-9.  Without *any* evidence linking Riddick to her unsuccessful job applications to CSOSA or to the health care specialist position, no reasonable jury could determine that Copeland was denied opportunities to apply for this job by Riddick.

Finally, when asked what other jobs she applied for, she testified, "I don't remember because I applied for so many." Pl. Dep. P17:3-10.  Such a conclusory statement cannot support an actionable claim.  Without more, no reasonable jury could conclude that Copeland carried her initial burden of establishing a prima facie case because she did not suffer any adverse action by Riddick.

### D. Denial of Training Opportunity.

Copeland mentioned briefly in her deposition that she suffered from retaliation when she was denied training for "drug counseling" or something similar. Pl. Dep. P164:17-P166:6. But Copeland testified that a different supervisor, Teresa Washington ("Washington")—*not* Riddick—denied her training request. Pl. Dep. P164:17-P166:6. Copeland's only argument connecting Washington's denial with Riddick was her belief that "supervisors work together." *Id.* While I must make all reasonable inferences in favor of plaintiff, without any evidence linking this alleged retaliatory event to Riddick, I have no basis upon which to make that inference here. Consequently, Copeland has not demonstrated that she suffered an adverse employment action *by Riddick*.

In response to the District's arguments that the alleged retaliatory acts did not constitute a materially adverse action, Copeland contends broadly that "context matters" and that each retaliatory act must be examined on a "case-by-case basis." Pl.'s Opp. at 9 (citations omitted). But Copeland does not cite to any facts or law that might put these retaliatory acts in the purview of Title VII.

Furthermore, Copeland argues that the temporal proximity of the alleged retaliatory events and her report of the "kiss me" comment creates an inference of a causal connection between her protected activity and the resulting retaliation. *Id.* at 10-11. But this argument is misplaced. Even if Copeland established causation through temporal proximity, she cannot recover for retaliation by Riddick when the facts demonstrate that she did not suffer any adverse employment action by Riddick in the first place. Because no reasonable jury

could find that Riddick's alleged retaliatory acts violate Title VII, the District is entitled to summary judgment on Count III.

## CONCLUSION

For all of the foregoing reasons, defendant's motion for summary judgment [Dkt. # 47] is **GRANTED**. Defendant's motion is **GRANTED** as to Count I because there is no genuine issue of material fact that Riddick subjected plaintiff to an actionable hostile work environment, to Count II because plaintiff's *quid pro quo* claim is time barred, and to Count III because there is no genuine issue of material fact that plaintiff was retaliated against by Riddick and suffered a materially adverse action by her employer when she filed her complaint with DOC in January 2012. An order consistent with this decision accompanies this Memorandum Opinion.

RICHARD J. LEON
United States District Judge